(C.D. 2298)

SWISSEDENT INTERNATIONAL
HOYT, SHEPSTON & SCIARONI } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 4, 1961)

*Lawrence & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*William H. Orrick, Jr.,* Assistant Attorney General (*Murray Sklaroff* and *Sheila N. Ziff,* trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on merchandise, described as "Candulor CR Shade Guides," imported from Switzerland on May 14, 1959, at 45 per centum ad valorem under paragraph 212 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, effective September 10, 1955, T.D. 53877, as chinaware articles, not tableware, kitchenware, or table or kitchen utensils, not containing 25 per centum or more of calcined bone. It is claimed that the merchandise is

free of duty under paragraph 1821 of said tariff act, added by Public Law 85–211, 85th Congress, 71 Stat. 486, as samples imported to be used in the United States only for soliciting orders for products of foreign countries.

At the trial, the protest was abandoned as to entry No. 13368, which covered so-called mold guides.

The pertinent provisions of the tariff act, as modified or amended, are as follows:

[PAR. 212, as modified.] China, porcelain, and other vitrified wares, * * * and manufactures in chief value of such ware, not specially provided for:

\*        \*        \*        \*        \*        \*        \*

    Articles which are not tableware, kitchenware, table or kitchen utensils, or chemical stoneware, and which do not contain 25 per centum or more of calcined bone. 45% ad val.

PAR. 1821 [as added]. (a) Except as provided in subparagraphs (b), (c), and (d), any sample to be used in the United States only for soliciting orders for products of foreign countries. [Free.]

(b) Subparagraph (a) shall apply to a sample only if its value does not exceed $1, except that this limitation shall not apply to (1) any sample which is marked, torn, perforated, or otherwise treated, in such a manner that such sample is unsuitable for sale or for use otherwise than as a sample, * * *.

\*        \*        \*        \*        \*        \*        \*

(f) The Secretary of the Treasury shall prescribe such regulations as may be necessary to carry out the provisions of this paragraph.

By T.D. 54492, the Secretary of the Treasury provided:

No additional regulations are necessary in order to permit classification under * * * subparagraphs (a) and (b) (1) of paragraph 1821 * * * of Public Law No. 85–211, inasmuch as the procedures provided for in the existing Customs Regulations are adequate to carry out the provisions of the statutes mentioned in this paragraph. * * *

Free entry of samples under the provisions of subparagraphs (a) and (b) (1) of paragraph 1821 will be facilitated if: (1) Each parcel or package in which such samples are mailed or otherwise shipped are clearly marked on the outside to indicate that they contain samples for which free entry will be claimed under subparagraph (a) or subparagraph (b) (1), as the case may be, of paragraph 1821; and (2) each parcel or package contains a statement to this effect and outlines the basis of the claim for free entry.

At the trial, Leland B. Chase testified that he is president of Swissedent International, Swissedent Los Angeles, Inc., Swissedent Chicago, Inc., and Swissedent New York, Inc., and is assistant treasurer of Swissedent Foundation, Inc. According to the witness, the business of Swissedent International is the distribution and sale of Candulor CR artificial porcelain teeth, manufactured in Zurich, Switzerland, by Alfred Steen Candulor Dental Manufacturing. It is the exclusive agent or purchaser of such merchandise for the United States. The other three companies, of which Mr. Chase is president, are sales companies servicing customers and selling Candulor CR artificial

porcelain teeth in certain areas of the United States. Swissedent Foundation, Inc., puts on courses for training dental technicians.

The witness explained that "Candulor" is a trade name, coined by the manufacturer of the product; that the "C" in "CR" refers to compactness, meaning density or strength, which is one of the characteristics of the product, and the "R" stands for reflective power, which indicates the quality of light reflection in the teeth. Any artificial teeth having the label "Candulor CR" are made only by Alfred Steen.

The witness stated that he was familiar with the shade guides described on the invoice herein and produced a sample, which was received in evidence as plaintiffs' collective exhibit 1. It consists of a fan-shaped article made up of 15 metal prongs, about 2 inches long, each having at its tip a simulated tooth. Each tooth is in a different shade or color. Each shade is identified by the number appearing on the prong. The article is contained in a box marked on the bottom "Sample, Not To Be Sold."

The Government introduced into evidence, as defendant's collective exhibit A, a similar shade guide in a slightly larger box, having no wording on the bottom. The witness stated that that box was of a type used prior to April 1959.

According to Mr. Chase, each tooth sample in the shade guide is different and distinct in color from any other and from any produced by any other manufacturer. The shades are divided into two categories: (1) Those resembling younger natural teeth, having a fresh unmarred appearance with few defects, and characterized by a bluish hue along the incisor biting edge, and (2) those resembling mature natural teeth, having small subtle stain lines on the surface and pigments where the enamel has been worn away by abrasion.

In ordering Candulor CR artificial teeth, a shade guide, such as plaintiffs' collective exhibit 1, and a pictorial mold chart are used. The former is needed to identify the particular color desired. A pictorial representation cannot be used in its place since, in the present state of the photographic arts, the subtle colorations and differences between various shades cannot be accurately reproduced. The pictorial mold chart shows the shape, size, and form of the artificial porcelain teeth carried in the manufacturer's line. The Candulor CR line has 15 different shades and many different molds, so that there are over 5,000 individual items.

Mr. Chase stated that the shade guide, plaintiffs' collective exhibit 1, is a color guide used for selecting and ordering Candulor CR artificial teeth. It is not sold, but is distributed free of charge to dentists and dental technicians who require it for the purpose of placing orders. According to the witness, it would not be possible to use the

teeth in the shade guide in a bridge or plate, because the metal prongs are attached in such a way that if the teeth are removed, part of their back surface would be destroyed. Furthermore, the samples do not represent any actual molds, but are merely idealistic forms for use as guides to the dentist in selecting the color he wants. Actual teeth, such as the anterior or front teeth exemplified in plaintiffs' collective exhibit 3, have gold-clad pins embedded in the porcelain and emerging from the back of the teeth, so that they may be joined to the denture base plastic. The posterior, or back teeth, exemplified in plaintiffs' collective exhibit 3, have little eminences or cusps as are found in natural teeth.

Mr. Chase added that his firm purchases the shade guides at 50 per centum of cost from the manufacturer, who assumes the other 50 per centum of the cost thereof.

Additional testimony was given by Dr. Balzell J. Potter, a dentist for 30 years, holding a B.S. and a D.D.S. degree from the University of California. He had used a shade guide, such as that here involved, in his own practice, in order to determine the proper colored teeth to order for patients, and said it would be very difficult to select teeth without a guide. He had never seen or heard of a guide being used for any purpose, other than that for which it was constructed. It would be possible, but highly impractical, to attempt to fabricate a denture out of the pieces of porcelain on the guide. He had never heard of such guides being sold to dentists or dental laboratories; it has been customary to present the user with a free shade guide.

Plaintiffs contend that the record presented establishes that plaintiffs' collective exhibit 1 is a sample which has been so treated that it is unsuitable for use otherwise than as a sample; that it is not sold in this country; and that it must be used for soliciting orders for Candulor CR teeth made only in Zurich, Switzerland. It is, therefore, claimed that the merchandise is entitled to free entry under the provisions of paragraph 1821, *supra*.

The Government has filed a statement to the effect that it does not intend to file a brief in this case.

Paragraph 1821, *supra*, has been construed by this court in two recent cases, *Carson M. Simon & Co.* v. *United States*, 46 Cust. Ct. 118, C.D. 2243, and *Italian Drugs Importing Co., Inc.* v. *United States*, 46 Cust. Ct. 243, C.D. 2263.

The *Carson M. Simon* case involved wallpaper sample books, imported for the account of A. L. Diament & Co., and distributed, unsolicited, to decorators throughout the United States, for the purpose of obtaining orders for the French and Italian wallpapers exhibited. Payment or return of the books was requested. Some recipients remitted payment; some retained the books; others retained them without payment. The individual sheets could not be used as wallpaper.

It was held that the books consisted of samples, entitled to free entry under paragraph 1821. The court stated:

The statutory object is achieved if international trade is expanded. The statutory means for accomplishing that result is the solicitation of orders for products of foreign countries. It seems obvious that whether or not the samples are owned by A.L. Diament & Co., the wallpapers which they display are products of a foreign country. When orders are placed, they relate to specific foreign manufactures. When orders are filled, the source of supply is the foreign production. If the distribution of the instant samples results in the purchase of French manufactured wallpapers, and it cannot be otherwise, to that extent, trade between France and the United States has been stimulated.

We are of the opinion that with respect to samples of nominal value, or so treated as to have no other use than in the solicitation of orders for merchandise, the conditions of paragraph 1821, *supra*, are met, if the samples represent the goods to be ordered, and the goods have been produced in a foreign country.

In *Italian Drugs Importing Co., Inc.* v. *United States*, *supra*, it was held that samples of vitamins, which were distributed to physicians who, in turn, distributed them to patients, were free of duty as "samples" under paragraph 1821, *supra*. It was pointed out that the only way the physician could test the samples was to dispense them to patients; that, if they proved effective, a demand would be created, and druggists and drug houses would order them; and that, therefore, the only purpose for which the samples were used was for the solicitation of orders.

In the instant case, it appears that the shade guides were imported by the exclusive agent or purchaser of Candulor CR artificial porcelain teeth, which were manufactured only in Switzerland; that they were not sold in this country, but were distributed to dentists and dental technicians for the purpose of obtaining orders; and that they were manufactured or treated in such a way that they were unsuitable for use for any purpose, other than as samples.

At the trial, counsel for the Government stated that he did not know whether the regulations had been complied with, but would take up the question in his brief. However, since no brief has been filed, it appears that the Government has abandoned any contention it might have had as to noncompliance with the regulations. The regulation in T.D. 54492, *supra*, to the effect that free entry of samples will be facilitated if the parcels are marked on the outside to indicate that they contain samples and if the parcels contain statements outlining the basis of the claim, is not a prerequisite for free entry, but a method which will expedite customs procedures.

On the record presented, we hold that the shade guides covered by entry No. 33463 are entitled to free entry under paragraph 1821 (a) and (b) of the Tariff Act of 1930, added by Public Law 85–211, 85th Congress, 71 Stat. 486, as samples to be used in the United States only

for soliciting orders for products of foreign countries, so treated that they are unsuitable for sale or for use otherwise than as samples.

To that extent, the protest is sustained. The claim as to the merchandise covered by entry No. 13368, having been abandoned, is dismissed. Judgment will be rendered accordingly.