## (C.D. 2494)

### VIVADENT CORPORATION *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 16, 1964)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: The merchandise here in litigation is described as "shade guides." They are used by dentists to ascertain the shade of a so-called restorative powder, called Achatit, which is used in filling teeth. On the basis of the shade guide, the dentist places his order for the desired shade. The "shade guide" is a fan-shaped article with 12 metal prongs, on which there are plastic articles somewhat resembling teeth. Each tooth is of a different shade, or color.

Four shipments of the shade guides were imported at the port of Boston between February 27, 1958, and April 10, 1959. Liquidation classification was protested. On trial in Boston, the two protests covering these four shipments were consolidated.

The collector assessed duty pursuant to the similitude provision of paragraph 1559, at 45 percent ad valorem, under modified paragraph 212, classifying the shade guides as porcelain articles, not specially provided for, and not tableware, kitchenware, or table or kitchen utensils, and not containing 25 percent or more of calcined bone.

The amended protests before us present three alternative claims. The first is that these "shade guides" are samples, within the meaning of paragraph 1821 (a) and (b), which were imported to be used only for soliciting orders within the United States. The second claim is for duty at 10 percent ad valorem under modified paragraph 1558, as a nonenumerated manufactured article. A third claim, and one of the claims that was made in the original protests, is for duty-free classification under paragraph 1629 (c), the provision for catalogs, pricelists and trade notices. This claim was abandoned by plaintiff in open court. No claim is made for the entry classification which was that the imported merchandise is steel, dutiable under modified paragraph 397 at 19 percent or 20 percent.

We proceed to decision on the remaining two protest claims.

Plaintiff called as witness its president, Mr. William H. Byron, and introduced into evidence (exhibit 1) a specimen "shade guide," testified to be illustrative of the merchandise of these consolidated protests. Defendant adduced no testimony and introduced no exhibits.

Plaintiff is in the business of selling dental supplies. The "shade guides" are distributed to dentists, who use them to determine the colors of Achatit that they want. In a few cases, where plaintiff has no dealer in a particular area, plaintiff may sell to the dentist directly. The usual course of business, however, is either to sell to dealers, or to dentists for account of dealers.

Achatit is used by dentists to fill cavities. It is a powdered silicate cement. This the dentist mixes with liquid phosphoric acid. The mixture has plasticity for a few minutes, while the dentist is inserting it in the cavity. Then the mixture loses its plasticity and hardens.

Plaintiff buys Achatit from Etablissement Vivadent, of Schaan, Liechtenstein, which also supplies the "shade guides" here in issue.

There is testimony that the plastic teethlike parts of the "shade guides" cannot be used as artificial teeth; that there is no purpose in having them resemble teeth, except that it is customary to do so; and that the "shade guide" might be made of other materials, such as paper, although those here in issue are made of plastic.

The difficulty with the claim for classification as samples, under paragraph 1821, either subparagraphs (a) or (b), is that the sample

provision is not quite so broad as plaintiff argues that it is. Paragraph 1821, subparagraphs (a) and (b), as amended, is as follows:

Par. 1821. (a) Except as provided in subparagraphs (b), (c), and (d), any sample to be used in the United States only for soliciting orders for products of foreign countries.

(b) Subparagraph (a) shall apply to a sample only if its value does not exceed $1, except that this limitation shall not apply to (1) any sample which is marked, torn, perforated, or otherwise treated, in such a manner that such sample is unsuitable for sale or for use otherwise than as a sample, or (2) any sample which is covered by subparagraph (c) or (d).

Subparagraphs (c) and (d), referred to in subparagraph (b) as providing an exception to the scope of subparagraph (a), relate, respectively, to samples of alcoholic beverages and of tobacco. The merchandise here is neither.

Plaintiff does not show that, even if we were to hold that these are samples such as are contemplated by subparagraph (a) of paragraph 1821, they would be free under the value specification of subparagraph (b), as having a value not exceeding $1 per sample. Evidently, although the point is not made in plaintiff's brief, reliance is on certain proofs that tend to show the shade guide "is unsuitable for sale or for use otherwise than as a sample."

The facts are not in dispute. Plaintiff causes these "shade guides" to be distributed to dentists who, as earlier noted, use them to select the shades of another product, Achatit, for which they wish to place orders. The "shade guides" are not Achatit. That is an entirely different product. It bears no resemblance to the "shade guides."

"Sample" has a well-recognized and long-defined meaning in tariff law. In its simplest definition, a sample is a specimen of merchandise. Whatever else they may be, these "shade guides" are not specimens of Achatit.

This connotation of the word "sample" seems to have been the tariff rule before the free list was extended, by Public Law 85–211, effective as to articles entered for consumption or withdrawn from warehouse for consumption on or after the date on which the International Convention to Facilitate the Importation of Commercial Samples and Advertising Material comes into force for the United States. That in-force date was October 17, 1957. T.D. 54463. New paragraph 1821 was then added to section 201 of the Tariff Act of 1930, effective October 17, 1957. This is the provision under which plaintiff claims that these "shade guides" are samples "to be used in the United States only for soliciting orders for products of foreign countries." It is evident that they are used to solicit orders for a product of a foreign country. That product is Achatit. But are they samples?

If these "shade guides" are such samples as paragraph 1821(a) contemplates, then we should proceed also to consider whether sub-

section (b), nevertheless, operates to rule out their free entry, as samples, by specific exclusion. Otherwise, we need not do so.

We are of the opinion that these are not samples, in the tariff sense.

Prior to 1913, the Secretary of the Treasury had, by regulation, ruled that certain samples, of whatever value, if used *bona fide* as samples, are to be admitted free. T.D.'s 31771, 32082. In *Allen & Lewis et al.* v. *United States*, 24 Treas. Dec. 401, T.D. 31637, decided March 1913, General Appraiser Waite held that the statute does not contain any provision that samples are to be entered free, and hence there was no warrant for the Secretary's regulation and it was without force or effect.

In that case, the samples were cookies, put up in containers which labeled the contents as samples. They were used to solicit orders for the cookies. There is no suggestion that these were not, in fact, samples. The holding is, simply, that Congress had not put samples on the free list and the Secretary could not do so by regulation.

In the Tariff Act of 1913, effective October 4, 1913, enacted shortly after the decision in *Allen & Lewis*, the following provision was included as a part of the free list, section IV, J, subsection 4:

* * * Samples solely for use in taking orders for merchandise * * *.

This language was repeated in the Tariff Act of 1922. It was found in section 308 of that act, paragraph (4).

The Tariff Act of 1930 kept the sample provision, put it in paragraph (3) of section 308, and added language that made the provision read as follows:

(3) Samples solely for use in taking orders for merchandise, or for examination with a view to reproduction * * *.

That was the language of the statute until the amendment which was effected by Public Law 85–211, adding to section 201 of the Tariff Act of 1930 (the free list), a new paragraph 1821, recited, *supra*. This is the provision under which plaintiff claims. As noted earlier, the 1957 enactment was timed to become effective when the International Convention to Facilitate the Importation of Commercial Samples and Advertising Material came into force for the United States. That date was October 17, 1957. (Public Law 85–211 also added to section 308(3) the words "and motion-picture advertising films," a provision not relevant to our decision here.)

The report of the Senate Committee on Finance, to accompany H.R. 5924 (which became Public Law 85–211), is found in United States Code Congressional and Administrative News, 85th Congress, first session, 1957, volume 2, page 1716. This General Statement of the Finance Committee states the purpose of the legislation, as follows:

The United States Customs treatment of imports of advertising matter and samples has not been an appreciable barrier to foreign concerns opening or

maintaining sales operations in this country and the enactment of the bill will not involve important changes in the tariff treatment of the imports involved. Nevertheless, enactment of the bill is necessary to bring such tariff treatment precisely into accord with that contemplated by the Convention. United States exporting interests place considerable importance on certain foreign countries accepting the Convention since it is believed that its provisions will facilitate the entry of samples and advertising matter into these countries from the United States.

H.R. 5924 would provide duty-free entry for import of catalogs, price lists, and trade notices relating to the sale or rental of foreign goods or services to , United States residents. At present imports of such advertising material if im-ported in bulk for subsequent distribution to potential customers are subject to duty as books, pamphlets, or other printed or lithographed paper articles. How-ever, imported advertising material distributed directly through the mails to potential customers is usually not subject to duty.

H.R. 5924 would provide for duty-free entry of certain samples to be used in the United States only for soliciting orders for products of foreign countries; the samples that could be so entered would be limited to ones valued at less than $1 each or samples that have been mutilated in such ways as to leave them useful only as samples and the samples of alcoholic beverages and tobacco products that would be enterable free under the bill are very closely restricted.

At present samples, regardless of value, are enterable free of duty under bond, the bonds being subject to liquidation upon exportation of the samples so entered. Samples valued at less than $1 each are also presently enterable free of duty under section 321 of the Tariff Act, a provision which authorizes collectors of customs under regulations issued by the Secretary of the Treasury to admit free of duty articles valued at not more than $1 each. *For this reason enactment of H.R. 5924 would not in important degree alter the present tariff treatment of samples.* [Emphasis supplied.]

This states the intention of the Congress that there was no purpose to alter, in any important way, "the present [i.e., pre-1957] tariff treatment of samples." Our inquiry, therefore, turns to ascertainment of what the tariff term "samples" then meant.

The problem now before us was considered by the Secretary of the Treasury in 1911, in the following directive to the collector of customs at New York:

You will, therefore, admit free of duty all bona fide samples which are obviously intended for use merely as samples of merchandise by which *to sell the class of goods which they represent,* irrespective of the question of their commercial value. On the other hand, samples intended for sale or which are not imported in good faith as samples within the definition above set forth, shall be deemed to be articles of merchandise and shall be charged with the appropriate rate of duty according to the class of goods to which they belong. [T.D. 31771; emphasis added.]

"Shade cards" were excluded as not being samples of the dyestuffs that were to be ordered from them. T.D. 16426 (G.A. 3215).

Our appeals court considered, in *Badische Co.* v. *United States*, 4 Ct. Cust. Appls. 374, T.D. 33535, whether samples showing color re-sults, for use by salesmen in soliciting orders for dyes, are samples,

and held that they were not. The decision rested on the long-standing tariff treatment of samples, described by the court in its opinion as follows:

It is unnecessary to exhaustively quote from these regulations, but sufficient to say that they appear to recognize from the earliest date mentioned the fact that samples of goods, such, for instance, as small strips or pieces of various fabrics and small quantities of raw material to be used as showing the kind and quality of the goods they *represent* which are sold on such samples ought to be given free entry. [P. 375; emphasis copied.]

There is a case, not cited by either of the parties, that on first view might seem to be relevant. *Duplan Silk Co.* v. *United States*, 30 Treas. Dec. 1033, T.D. 36488. Careful reading shows that it does not support plaintiff's contention. An importer brought in small skeins of silk yarn of various colors, arranged in book form, together with swatches of gray cloth, all to be used in taking orders for silk fabrics, to be made abroad of threads like the samples and in a quality of material like the cloth. Distinguishing *Badische* v. *United States*, *supra*, General Appraiser Waite said:

* * * the only question to be determined is, Are these such samples as are intended to be covered by the statute? We think they are. They are samples of color, samples of some part of the completed merchandise. A sample of the fabric to be colored is exhibited at the same time. The purchaser is allowed to inspect the colors and choose therefrom the color he will have for his completed article. The goods in their completed state can not be clearly and intelligently presented to the purchaser without the use of some such device as the sample, so-called, in this case. We do not think under the circumstances of this case and the reading of the statute that it is necessary to have for sample a completed article such as is intended to be sold in the market. [P. 1035.]

Plaintiff's brief cites only three cases in support of its argument that these "shade guides" are such samples as Congress intended to include in the free entry provision under Public Law 85–211. In our opinion, the cited cases are distinguishable on the facts.

In *Swissedent International* and *Hoyt, Shepston & Sciaroni* v. *United States*, 47 Cust. Ct. 174, C.D. 2298, plaintiff concedes that the imported articles were simulated teeth used to order artificial teeth. Here, the imported articles do not simulate Achatit, which is the product to be ordered.

In *Carson M. Simon & Co.* v. *United States*, 46 Cust. Ct. 118, C.D. 2243, the imported articles were wallpaper sample books, distributed for the purpose of obtaining orders for the French and Italian wallpapers that were exhibited in the samples.

In *Italian Drugs Importing Co., Inc.* v. *United States*, 46 Cust. Ct. 243, C.D. 2263, vitamins were claimed to be samples of the vitamins for which orders were solicited. The court held that they were samples.

Plaintiff appears to argue that Public Law 85–211 has extended the meaning of the word "sample." We do not so read the General State-

ment of the Finance Committee in recommending the bill which became the law. We know of nothing that would indicate an intention to enlarge the concept of what are "samples" beyond the scope of the then tariff treatment.

As to whether these are enumerated or nonenumerated articles, plaintiff cites only *Air Express Int'l Agency, Inc., et al.* v. *United States*, 46 Cust. Ct. 163, C.D. 2251. Defendant argues that the decision in that case is not relevant to the issue here. We think that it is relevant.

The *Air Express Int'l Agency* case incorporated the record in *Maher-App & Company* v. *United States*, 44 CCPA 22, C.A.D. 630, and it was stipulated that the merchandise was the same in all material respects as the *Maher-App* merchandise. We have neither such a stipulation nor proof to like effect, as to the instant merchandise. We do have proofs that these are plastic articles which somewhat resemble artificial teeth, but that they cannot be used as such teeth. They are not china, porcelain, or other vitrified wares, or manufactures in chief value of such ware, within the enumeration of paragraph 212. If they are to be classified under paragraph 212, they can be so classified only by similitude in use, as provided in paragraph 1559. This presupposes that they are nonenumerated articles, so as to fall under paragraph 1558. This must have been the basis of the collector's classification.

On the record before us, we find that these articles of plastic and steel are nonenumerated manufactured articles, dutiable under paragraph 1558. On the authority of *Maher-App, supra,* and *Air Express Int'l, supra,* we hold that similitude in use has been negatived by proofs here that these articles cannot be *used,* as artificial teeth.

The claim for duty at 10 percent ad valorem under paragraph 1558, as modified, is sustained. The claim for free entry under paragraph 1629(c) is dismissed. As to all other claims, the protests are overruled.

Judgment will be entered accordingly.